# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIO N. CITTADINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19 cv 08073 |
| | ) |
| WESTLAKE PORTFOLIO | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

## **DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

In response to Plaintiff's complaint, Defendant, Westlake Portfolio Management, LLC ("Westlake Portfolio Management"), by its attorneys, states as follows for its answer, affirmative defense, and counterclaim:

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 et seq. and the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 et seq. for Defendant's unlawful conduct.

**ANSWER**: Westlake Portfolio Management admits that Plaintiff has filed a lawsuit against Westlake Portfolio Management, and that Plaintiff seeks recovery under the FDCPA and the TCPA. Westlake Portfolio Management denies the remaining allegations in this paragraph.

2. This action arises under and is brought pursuant to the FDCPA and TCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. § 1692, 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

**ANSWER**: Westlake Portfolio Management does not contest subject-matter jurisdiction. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Illinois and a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

4. Plaintiff is a 29 year old natural "person," as defined by 47 U.S.C. §153(39), residing in Chicago, Illinois, which lies within the Northern District of Illinois.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

5. Defendant is a third party debt collector that specializes in the collection of debts owed to "finance companies, private investors, and loan holders of auto loans portfolios."[1] Defendant is a limited liability company organized under the laws of the state of California with its principal place of business located at 4751 Wilshire Boulevard, Suite 100, Los Angeles, California.

**ANSWER:** Westlake Portfolio Management admits that the cited webpage states that Westlake Portfolio Management "specializes in third-party servicing solutions for finance companies, private investors, and loan holders of auto loan portfolios." Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in the first sentence of this paragraph. Westlake Portfolio Management admits the allegations in the second sentence of this paragraph.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

**ANSWER**: Westlake Portfolio Management admits that Westlake Portfolio Management placed calls to Plaintiff. Westlake Portfolio Management admits that Plaintiff alleges that, in placing calls to Plaintiff, Westlake Portfolio Management violated the FDCPA and the TCPA. Westlake Portfolio Management denies that Westlake Portfolio Management violated

---

[1] https://www.wpmservicing.com/

the FDCPA or the TCPA. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

8. The instant action arises out of Defendant's attempts to collect upon purported past due payments ("subject debt") said to be owed in connection with the purchase of a 2014 Dodge Avenger ("subject automobile") made by Plaintiff's brother.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

9. The subject debt stems from Plaintiff acting as a cosigner in connection with the financing his brother received from Summit Financial ("Summit") in order to purchase the subject automobile.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

10. The subject automobile was repossessed by Summit in approximately July 2019 after Plaintiff's brother missed one payment.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

11. Thereafter, upon information and belief, Defendant acquired the collection rights to or was otherwise assigned the subject debts for collection after Plaintiff's brother's purported default on his obligations to Summit.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph. Westlake Portfolio Management affirmatively states that, after Plaintiff had defaulted on the subject debt, Westlake Portfolio Management became the servicer for Plaintiff's account.

12. In approximately fall 2019, Plaintiff began receiving calls to his cellular phone, (813) XXX-9052, from Defendant.

**ANSWER**: Westlake Portfolio Management admits that Westlake Portfolio Management called Plaintiff at the number referenced in this paragraph. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

13. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in 9052. Plaintiff is and always has been financially responsible for the cellular phone and its services.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

14. Defendant uses several different phone numbers when calling Plaintiff's cellular phone, including but not limited to: (844) 358-0645, (813) 489-6821, (727) 330-3161, (844) 358-0644, and (727) 337-7011.

**ANSWER**: Westlake Portfolio Management admits the allegations in this paragraph.

15. Upon information and belief, the above referenced phone numbers are regularly utilized by Defendant during its debt collection activities.

**ANSWER**: Westlake Portfolio Management admits that, in connection with servicing Plaintiff's account, Westlake Portfolio Management placed calls from the number referenced in the preceding paragraph. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

16. On answered calls from Defendant, Plaintiff experiences a noticeable pause, followed by a prerecorded message directing Plaintiff to hold for the next available representative.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

17. Upon speaking with Defendant's representative, Plaintiff was informed that it was calling attempting to collect upon the subject debt.

**ANSWER**: Westlake Portfolio Management admits that, in calls with Plaintiff, Westlake Portfolio Management requested payment on Plaintiff's account. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

18. Plaintiff informed Defendant that he would not be paying the subject debt since the subject automobile was repossessed, and further demanded that Defendant stop contacting his cellular phone.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

19. Plaintiff has reiterated his demand that Defendant cease contacting his cellular phone on several occasions.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

20. Notwithstanding Plaintiff's demands, Defendant has continued placing repeated and continuous phone calls to Plaintiff's cellular phone attempting to collect upon the subject debt up until the filing of the instant action.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

21. On multiple occasions, Defendant placed upwards of 5 phone calls on the same day to Plaintiff's cellular phone – and rarely places less than 3 calls on the same day – all after Plaintiff made repeated demands that Defendant stop its harassing campaign of collection calls.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

22. Plaintiff has received not less than 125 phone calls from Defendant since demanding that it stop contacting his cellular phone.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

23. Frustrated over Defendant's conduct, Plaintiff spoke with Sulaiman regarding his rights, resulting in expenses.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

24. Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

25. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, invasion of privacy, aggravation that accompanies excessive collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

## COUNT I

26. Plaintiff repeats and realleges paragraphs 1 through 25 as though fully set forth herein.

**ANSWER:** Westlake Portfolio Management restates its answers to those paragraphs.

27. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

28. Defendant is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly uses the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

**ANSWER**: Westlake Portfolio Management admits that, in connection with the collection of certain debts (*i.e.*, debts constituting "consumer debts" under the FDCPA), Westlake Portfolio Management is a debt collector under the FDCPA. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

29. Defendant is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

**ANSWER**: Westlake Portfolio Management admits that Westlake Portfolio Management's business includes the collection of past-due amounts initially due to others. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

30. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

**ANSWER**: Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

31. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." §1692d(5) further prohibits, "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."

**ANSWER**: Westlake Portfolio Management admits that section 1692d of the FDCPA states that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Westlake Portfolio Management admits that section 1692d of the FDCPA states that, "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section:…(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Westlake Portfolio Management denies any remaining allegations in this paragraph.

32. Defendant violated §1692c(a)(1), d and d(5) when it repeatedly and continuously placed phone calls attempting to collect the subject debt after being notified to stop. This behavior of systematically calling Plaintiff's phone on a frequent basis in spite of his demands was harassing and abusive. The frequency and volume of calls placed after Plaintiff demanded that the calls stop shows that Defendant willfully violated the law and ignored Plaintiff's pleas with the intent to annoy and harass Plaintiff.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

33. Defendant was notified by Plaintiff that its calls were not welcomed. As such, Defendant knew that its conduct was inconvenient and harassing to Plaintiff.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

33 [*sic*]. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

**ANSWER**: Westlake Portfolio Management admits that section 1692e states that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Westlake Portfolio Management denies any remaining allegations in this paragraph.

34. In addition, this section enumerates specific violations, such as:
The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

**ANSWER**: Westlake Portfolio Management admits that section 1692e states that, "[w]ithout limiting the general application of the foregoing, the following conduct is a violation of this section:…(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Westlake Portfolio Management denies any remaining allegations in this paragraph.

35. Defendant violated §1692e and e(10) when it used deceptive means to collect and/or attempt to collect the subject debt. In spite of the fact that Plaintiff demanded that it stop contacting him, Defendant placed repeated calls to his cellular phone using prerecorded messages. Instead of putting an end to this harassing behavior, Defendant placed repeated calls to Plaintiff's cellular phone in a deceptive attempt to force him to answer its calls and ultimately make a payment. Through its conduct, Defendant misleadingly represented to Plaintiff that it had the legal ability to contact him via an automated system using prerecorded messages when any such hypothetical consent had been explicitly revoked by Plaintiff's demands.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

36. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

**ANSWER**: Westlake Portfolio Management admits that section 1692f of the FDCPA states that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Westlake Portfolio Management denies any remaining allegations in this paragraph.

37. Defendant violated §1692f when it unfairly and unconscionably attempted to collect on a debt by repeatedly calling Plaintiff after being notified to stop. Attempting to coerce Plaintiff into payment by placing voluminous phone calls without his permission and after Plaintiff repeatedly asked that the phone calls stop is unfair and unconscionable behavior. These means employed by Defendant only served to worry and confuse Plaintiff.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

WHEREFORE, Westlake Portfolio Management respectfully requests that this Court enter judgment in Westlake Portfolio Management's favor and against Plaintiff, and award Westlake Portfolio Management its costs and such other relief as this Court deems proper.

# COUNT II

38. Plaintiff repeats and realleges paragraphs 1 through 37 as though fully set forth herein.

**ANSWER**: Westlake Portfolio Management restates its answers to those paragraphs.

39. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS"), as well as using prerecorded messages, without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

**ANSWER**: Westlake Portfolio Management admits that section 227(b)(1)(A) of the TCPA states that it "shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--…(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." Westlake Portfolio Management admits that section 227(a)(1) states that the "term 'automatic telephone dialing system' means equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Westlake denies any remaining allegations in this paragraph.

40. Defendant used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The noticeable pause lasting several seconds in length that Plaintiff experiences during answered calls from Defendant is instructive that an ATDS is being utilized to generate the phone calls. Additionally, the nature and frequency of Defendant's contacts, including repeated calls after being notified to stop, points to the involvement of an ATDS.

**ANSWER**: Westlake Portfolio Management admits that, in an attempt to communicate with Plaintiff, Westlake Portfolio Management used automated technology. Westlake Portfolio Management denies that Westlake Portfolio Management's automated technology constitutes an ATDS. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the allegations in the second sentence of this paragraph. Westlake Portfolio Management denies the allegations in the third sentence of this paragraph. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations in this paragraph.

41. Defendant's use of prerecorded messages further brings its phone calls within the ambit of the TCPA.

**ANSWER**: Westlake Portfolio Management admits that, in an attempt to communicate with Plaintiff, Westlake Portfolio Management used pre-recorded messages. Westlake denies any remaining allegations in this paragraph.

42. Defendant violated the TCPA by placing at least 125 phone calls to Plaintiff's cellular phone using an ATDS and using prerecorded messages without his consent. Any hypothetical express consent Plaintiff *may* have given to the originator of the subject debt by virtue of being a cosigner, which Defendant will likely assert transferred down, was explicitly revoked by Plaintiff's repeated demands that Defendant cease calling his cellular phone.

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

43. The calls placed by Defendant to Plaintiff were regarding business transactions and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

**ANSWER**: Westlake Portfolio Management admits that, in section 227(b)(1)(A)(i), the TCPA states that it is unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -- (i) to any emergency telephone line (including any '911' line and any emergency line of a hospital, medical physician or service office, health care

facility, poison control center, or fire protection or law enforcement agency)." Westlake Portfolio Management admits that, in calling Plaintiff, Westlake Portfolio Management sought, among other things, to obtain payment on Plaintiff's account. Westlake Portfolio Management lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

44. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call. Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).

**ANSWER**: Westlake Portfolio Management denies the allegations in this paragraph.

WHEREFORE, Westlake Portfolio Management respectfully requests that this Court enter judgment in Westlake Portfolio Management's favor and against Plaintiff, and award Westlake Portfolio Management its costs and such other relief as this Court deems proper.

**AFFIRMATIVE DEFENSES**

**Affirmative Defense I (Arbitration)**

1. Plaintiff entered into a retail installment sales contract ("Retail Installment Sales Contract") for the purchase of a 2014 Dodge Avenger ("Vehicle").

2. Westlake Portfolio Management is the servicer for Plaintiff's account.

3. The Retail Installment Sales Contract contains an arbitration provision.

4. Under the arbitration provision, Plaintiff agreed that any claim relating to the Retail Installment Contract or the Vehicle may be decided in arbitration and not in court.

**Affirmative Defense II (Personal Jurisdiction)**

5. Westlake Portfolio Management is a limited liability company organized under the laws of the state of California with its principal place of business located in California.

6. The Vehicle was purchased in Florida.

7. At the time the vehicle was purchased, Plaintiff was a resident of the state of Florida.

8. At the time of the calls challenged in this case, Plaintiff was a resident of the state of Florida.

9. Personal Jurisdiction is lacking.

## **COUNTERCLAIM**

### **Breach of Contract**

Westlake Portfolio Management, by its attorneys, states as follows for its counterclaim against Plaintiff:

1. Plaintiff entered into a retail installment sales contract ("Retail Installment Sales Contract") for the purchase of a 2014 Dodge Avenger ("Vehicle").

2. Westlake Portfolio Management is the servicer for Plaintiff's account.

3. Under the Retail Installment Sales Contract, Plaintiff agreed to make total payments of over $26,265.50.

4. The Retail Installment Contract states that Plaintiff is in default if, among other things, Plaintiff "break[s] any agreement in" the Retail Installment Sales Contract.

5. The Retail Installment Sales Contract states that, if Plaintiff defaults, the Vehicle may be repossessed.

6. The Retail Installment Sales Contract states that, if the Vehicle is repossessed, the Vehicle may be sold.

7. The Retail Installment Sales Contract states that, "[i]f money from the sale is not enough to pay the amount [Plaintiff] owe[s], [Plaintiff] must pay the rest."

8. Plaintiff failed to pay the total payments due under the Retail Installment Sales Contract.

9. The Vehicle was repossessed and sold.

10. After the sale of the Vehicle, there remains a balance of $9,750.00 ("Deficiency Balance").

11. Plaintiff has not paid the Deficiency Balance.

12. Plaintiff is in default under the Retail Installment Sales Contract.

13. Plaintiff has breached the Retail Installment Sales Contract.

WHEREFORE, Westlake Portfolio Management respectfully requests a judgment finding that Plaintiff breached the Retail Installment Sales Contract, and ordering Plaintiff to pay Westlake Portfolio Management the Deficiency Balance of $9,750.00 plus other fees and charges as permitted under the Retail Installment Sales Contract and applicable law.

Dated: February 7, 2020          **WESTLAKE PORTFOLIO MANAGEMENT, LLC**,
Defendant


/s/ Scott J. Helfand
One of Its Attorneys

Scott J. Helfand
HUSCH BLACKWELL LLP
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
(312) 655-1500
(312) 655-1501 (fax)
scott.helfand@huschblackwell.com

## CERTIFICATE OF SERVICE

I, Scott J. Helfand, an attorney, hereby certify that a true and correct copy of the foregoing, **Defendant's Answer, Affirmative Defenses, and Counterclaim**, was served electronically upon counsel of record through the Court's electronic filing system this 7th day of February 2020.

/s/ Scott J. Helfand